UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 07-CR-77 (MJD/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| Zachary Thomas Welch (01), Andrew Lee Stichmann (02), Adam Joseph Nelson (03) and Gerald Traczyk, Jr. (04), | |
| **Defendants.** | |

Andrew Winter, Esq., Assistant U.S. Attorney, on behalf of the Government

Kevin J. Short, Esq., on behalf of Defendant Zachary Thomas Welch

Andrea K. George, Esq., Assistant Federal Defender, on behalf of Defendant Andrew Lee Stichmann

Stephen W. Walburg, Esq., on behalf of Defendant Gerald Traczyk, Jr.

SUSAN RICHARD NELSON, United States Magistrate Judge

    The above-captioned matter comes before the undersigned United States Magistrate Judge on Defendant Andrew Lee Stichmann's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 39) and Defendant Zachary Thomas Welch's Motion to Suppress Physical Evidence (Doc. No. 51). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

1

**I.     BACKGROUND**

An Indictment was filed on March 13, 2007 charging Defendants Welch and Stichmann with one count of conspiracy to distribute 3,4-methylenedioxymethamphetamine ("MDMA"), commonly known as ecstacy, in violation of 21 U.S.C. §§ 841(b)(1)(c) and 846, each with one count of distribution of ecstacy, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of possession with intent to distribute ecstacy, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (Doc. No. 10.)

No testimony was given and no exhibits were received at the criminal motions hearing. However, as exhibits to its response to Defendants' pretrial motions, the Government submitted two search warrants, and accompanying applications, affidavits, and returns: one for a residence in Sand Lake, Wisconsin, occupied at the time of the warrant's issuance by an accomplice of Defendants (Govt. Ex. 1) and one for a residence in Stone Lake, Wisconsin, occupied by at least Defendant Stichmann (Govt. Ex. 2).  This matter is set for trial before United States District Judge Michael J. Davis on May 14, 2007.

**II.    FACTS**

On February 23, 2007, Jay D. Smith, a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation ("DCI"), Narcotics Bureau, applied for search warrants for two residences in Sawyer County, Wisconsin.  The facts below are as set forth in the affidavits supporting Special Agent Smith's warrant applications, and are undisputed by the parties.  On September 21, 2006, Special Agent Jon Spallees of the Wisconsin DCI met with Special Agent Tom Oliveto of the Minnesota Bureau of Criminal Apprehension ("BCA"), and other investigators from

Minnesota. (Search Warrant App. and Aff., Govt. Ex. 2. at 9)  The officers discussed a report from Minnesota law enforcement officers that, in August and September 2006, a Confidential Informant ("CI") had made several controlled purchases of MDMA from Defendants Adam Joseph Nelson and Gerald Traczyk, Jr. (Id.)  These purchases were in the approximate amounts of 100, 80 and 150 tablets, respectively. (Id. at 9)  The CI reported that the source of the MDMA was believed to be Defendant Stichmann, who lived in the Hayward, Wisconsin area. (Id.)  The CI also reported that, on or about September 27, 2006, Defendants Nelson and Traczyk would travel to their source in Wisconsin to pick up 1,000 tablets of MDMA. (Id.)

At some time following the meeting, the CI apparently arranged to purchase 500 tablets of MDMA from Defendants Nelson and Traczyk on September 29, 2006. (Id.)  In anticipation of Defendants Nelson and Traczyk's trip to their source in Wisconsin, a GPS tracking device was apparently installed on Defendant Nelson's vehicle. (Id.)  On September 28, 2006, investigators from the Wisconsin DCI and Minnesota BCA engaged in surveillance of Defendants Nelson and Traczyk as they traveled in Defendant Nelson's vehicle from their place of employment in Eau Claire, Wisconsin to the intersection of State Highway 70 and County Highway E in Wisconsin. (Search Warrant App. and Aff., Govt. Ex. 2. at 9.)  The investigators followed the vehicle West on State Highway 70 until it returned to the Defendants' home in Minnesota. (Id.)  Special Agent Oliveto later informed Special Agent Smith that, on September 29, 2006, Defendant Nelson sold 500 MDMA tablets to the CI for approximately $4,000, and at that time, Defendant Nelson told the CI that he had obtained a total of 1,000 tablets from his source in Wisconsin. (Id.)

Upon further investigation, Special Agent Spallees learned that the GPS tracking device

indicated that Defendant Nelson's vehicle had traveled to an area containing a particular residence in Stone Lake, Wisconsin. (Id.) The utility bill at that residence indicated that the subscriber was Defendant Stichmann. (Id.) A background check of Defendant Stichmann revealed that, on January 15, 2006, he and an associate were arrested in Minnesota, and the arresting officer seized approximately 2,968 tablets of MDMA. (Id.)

On October 11, 2006, Minnesota law enforcement officers used the CI to arrange a purchase of 1,500 MDMA tablets from Defendants Nelson and Traczyk. (Id.) In the course of their conversation, Defendants Nelson and Traczyk agreed to deliver the MDMA on the following day, but told the CI that they had to obtain that quantity of MDMA from their source. (Id.) During the course of a second surveillance operation, investigators followed Defendants Nelson and Traczyk from their place of employment to the Stichmann residence in Stone Lake, Wisconsin. (Id. at 10.) Nelson and Traczyk were at the residence for approximately five minutes before leaving to return to Minnesota. (Id.) At some point, Special Agent Oliveto contacted Special Agent Spallees and told him that the CI had made contact with Defendant Traczyk shortly after Defendants Traczyk and Nelson left the Stone Lake area, and Defendant Traczyk informed the CI that he had just obtained the "stuff." (Search Warrant App. and Aff., Govt. Ex. 2. at 10.) Special Agent Spallees then apparently instructed the investigators to arrest Defendants Nelson and Traczyk. (Id.)

Beginning on October 13, 2006, Special Agents Spallees and Oliveto interviewed Defendants Nelson and Traczyk. (Id.) Defendants Nelson and Traczyk told the officers that they had known Defendant Stichmann since their early teenage years in the Hayward, Wisconsin area. (Id.) They both met Defendant Welch in the summer of 2006, and they believed that Defendant Welch was living with

Defendant Stichmann in Sand Lake, Wisconsin at that time. (Id.) During the summer of 2006, Defendants Nelson and Traczyk began to obtain MDMA from Defendants Welch and Stichmann. (Id.) They informed the officers that, more recently, they had traveled to Defendants Welch and Stichmann's new residence near Stone Lake, Wisconsin where they obtained 1,000 tablet quantities of MDMA from Defendants Welch and Stichmann. (Id.) Special Agent Smith noted that the residence described was known to be the address to which Defendants Nelson and Traczyk had driven previously and was the residence that was the subject of the warrant application. (Id.)

Defendants Nelson and Traczyk placed all of their MDMA orders through Defendant Welch, who directed them to Defendant Stichmann when he was unavailable. (Id.) Defendants Nelson and Traczyk told the officers that, while they initially paid $4.50 per tablet of MDMA, they were now paying $4.00 per tablet. (Id.) In addition, they informed the officers that they knew that Defendant Welch stored the MDMA at another location, possibly a mini warehouse, and they believed that he had access to as many as 100,000 tablets of MDMA. (Id.)

On October 15, 2006, Special Agent Spallees and Special Agent Oliveto arranged for Defendant Traczyk to make a controlled purchase of 900 MDMA tablets from Defendant Stichmann. (Id.) Defendant Traczyk went to Defendant Stichmann's residence, and paid Defendant Stichmann $4,000 for a previously obtained purchase of 1,000 MDMA tablets. (Id.) In addition, he purchased 900 more MDMA tablets with a $2,000 down payment. (Id.) These MDMA tablets were a mix of purple and pink in color with specs of glitter and inscribed with a "spacemen" or "AOL man." (Id.) An audio recording of the transaction was apparently made. (Id.)

In October 2006, Special Agent Smith began using Confidential Informant-569 ("CI-569") to

purchase MDMA from an accomplice of Defendants who will be identified as "Accomplice W." (Search Warrant App. and Aff., Govt. Ex. 1. at 12.) The MDMA tablets purchased from Accomplice W in October and November 2006 were purple/pink or purple in color, contained specs of glitter and were inscribed with a "spaceman" or "AOL man" on one side. (Id.) After subsequent investigation of Accomplice W, police began to suspect the involvement of another accomplice, herein identified as "Accomplice M." (Id. at 13-18) On January 15, 2007, Accomplice M was arrested for possession of marijuana following a traffic stop. (Id. at 15.) Accomplice M had in her possession what appeared to be a drug ledger, which included names of persons and amounts of drugs. (Id.) In addition, she had a bank deposit receipt for $5,000 cash. (Id.) Agent Smith noted in the affidavit that Accomplice M had no known legitimate source of income at that time. (Id.) Moreover, further investigation revealed that a storage locker tied to Defendant Welch's supply of MDMA was rented in Accomplice M's name. (Id.) On or about January 18, 2007, Accomplice M failed to respond when Officers contacted her regarding a burglary at the storage locker. (Search Warrant App. and Aff., Govt. Ex. 1. at 15-16.) On the basis of this investigation and past incidents connecting Accomplice M to Defendants Welch and Stichmann, and others under investigation, Agent Smith applied for warrants to search Defendant Stichmann's and Accomplice M's residences.

At the time of the warrant applications, Special Agent Smith had been with the Wisconsin DCI's Narcotics Bureau for just over nine years, and had more than eight years of prior law enforcement experience. (Search Warrant App. and Aff., Govt. Ex. 1. at 5, Search Warrant App. and Aff., Govt. Ex. 2. at 5.) In addition, Special Agent Smith had undergone 320 hours of specialized narcotics training, had served as a lead investigator in numerous complex drug transactions, had made

controlled purchases as an undercover officer, and had worked with numerous informants in the investigation of drug trafficking. (Id., Id.) He averred that he believed that the information provided by Defendants Nelson and Traczyk was reliable because it was against their penal interest and because it had been independently corroborated by other sources. (Search Warrant App. and Aff., Govt. Ex. 2. at 17.) He further stated that, as a result of his training and experience, he had learned that persons engaged in the manufacture, distribution and use of narcotics habitually keep a supply of drugs on hand for immediate sale. (Search Warrant App. and Aff., Govt. Ex. 1. at 6, Search Warrant App. and Aff., Govt. Ex. 2. at 6.) According to Special Agent Smith, typical locations for such a supply of drugs included a narcotics trafficker's person, vehicle and home, as well as any garages, outbuildings, storage areas or sheds associated with their homes. (Id., Id.)

Two warrants, authorizing the search of Defendant Stichmann's and Accomplice M's residences, respectively, including any storage facilities and vehicles on each premises, were issued by a Wisconsin Circuit Court Judge on February 23, 2007. (Search Warrant App. and Aff., Govt. Ex. 1. at 2, Search Warrant App. and Aff., Govt. Ex. 2. at 2.) The warrants were executed on February 27, 2007. (Id. at 3, Id. at 3.) The search of Stichmann's residence returned approximately two hundred grams of marijuana, two handguns, $7,810 in United States currency, other items of drug paraphernalia, and various other items. (Search Warrant App. and Aff., Govt. Ex. 2. at 3.) The search of Accomplice M's residence returned over ten pounds of MDMA tablets, about 12 pounds of marijuana, three firearms, drug packaging materials, documents and marijuana growing equipment. (Search Warrant App. and Aff., Govt. Ex. 1. at 3.)

**III.    DEFENDANT STICHMANN'S MOTION TO SUPPRESS**

Defendant Stichmann argues that the Court should suppress the evidence seized from his residence[1] because the warrant authorizing the search thereof was issued upon an affidavit that did not set forth sufficient probable cause to support the search.  The Government argues that Special Agent Smith's affidavit sets forth ample probable cause to support the search.

"It is well-established that courts may *not* look to facts outside the affidavit in determining the existence of probable cause," United States v. Martin, 833 F.2d 752, 757 (8th Cir. 1987) (Lay, C.J., concurring), cert. denied, 494 U.S. 1070 (1990); rather, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999)(internal citation omitted).

"Probable cause exists if, based upon a common-sense consideration of all the circumstances set forth in the supporting affidavit, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978).

Importantly, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision" as to

---

[1] At the motions hearing, Defendant Stichmann's counsel clarified that his motion to suppress pertained only to evidence seized from his residence.

whether a showing of probable cause has been met. Illinois v. Gates, 462 U.S. 213, 235 (1983). Rather, "'in dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Id. at 231 (citations omitted).

"[T]he preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination" as to the existence of probable cause. United States v. Leon, 468 U.S. 897, 914 (1984)(internal citation omitted); accord Gates, 462 U.S. at 236-37. In this regard, this Court does not make a de novo review of the sufficiency of the affidavit. Gates, 462 U.S. at 236; accord United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986) ("[A] district court should not make a de novo determination of probable cause . . . ."). Rather, "the decision to issue the warrant is to be upheld if supported by substantial evidence in the record," Reivich, 793 F.2d at 959, or, in other words, "so long as the [issuing Judge] had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Gates, 462 U.S. at 236. Moreover, a court "may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." United States v. Carlson, 697 F.2d 231, 238 (8th Cir. 1983).

"[W]hen an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations–but not independent, essential elements–in finding probable cause." Reivich, 793 F.2d at 959 (citing Gates, 462 U.S. at 230); accord, e.g., United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996). The information from a CRI is sufficiently reliable if it is corroborated by other evidence, or if the informant has a history of providing reliable information. United States v. Williams, 10 F.3d 590, 593 (8th Cir.

9

1993).  In the end, these considerations "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether in the totality of the circumstances the issuing Judge had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 230, 236.

Special Agent Smith's affidavit sets forth evidence of two drug purchases at Defendant Stichmann's residence, a controlled purchase at Defendant Stichmann's residence, facts gathered by other officers involved in the investigation, as well as inferences drawn from Special Agent Smith's knowledge and experience, all of which support the conclusion that narcotics trafficking was occurring at Defendant Stichmann's residence.

Special Agent Smith's affidavit describes how the circumstances surrounding Defendants Nelson's and Traczyk's visit to Defendant Stichmann's residence on September 28, 2006 provide strong evidence that Defendants Nelson and Traczyk purchased narcotics there at that time.  First, prior to the visit, the CI informed law enforcement that he/she believed Defendant Stichmann to be the source of the MDMA that he/she had purchased from Defendants Nelson and Traczyk in August and September 2006.  Second, Defendants Nelson and Traczyk visited Defendant Stichmann's residence only after arranging to sell 500 tablets of MDMA to the CI on the day following the visit.  Finally, when Defendant Nelson made this sale, he reported to the CI that he had obtained 1,000 tablets of MDMA from his source in Wisconsin.

Agent Smith's affidavit also sets forth an account of a second MDMA purchase at Defendant Stichmann's residence on October 11 or October 12, 2006, again involving Defendants Nelson and Traczyk.  In response to the CI's inquiry about the purchase of 1,500 tablets of MDMA, Defendants

Nelson Traczyk agreed to deliver the narcotics, but indicated that they had to travel to their source to obtain that quantity of MDMA.  Law enforcement officers apparently followed Defendants Nelson and Traczyk to Stichmann's residence.  Defendants Nelson and Traczyk were at Defendant's Stichmann's residence for less than five minutes before leaving for Minnesota.  When the CI contacted Defendant Traczyk shortly after Defendants Nelson and Traczyk left Defendant Stichmann's residence, Defendant Traczyk informed him/her that they had just obtained "the stuff."  At their subsequent arrest, Defendants Nelson and Traczyk had in their possession 1,500 tablets of MDMA, the quantity requested by the CI.

Agent Smith's affidavit further sets forth how, upon questioning, Defendants Nelson and Traczyk reported that they had begun purchasing MDMA from Defendants Stichmann and Welch in the summer of 2006.  They provided details of how the sales were conducted and information about the prices they paid.

On October 15, 2006, under the direction of Special Agents Spallees and Oliveto, Defendant Traczyk made a controlled purchase from Defendant Stichmann at his residence.  He paid Defendant Stichmann $4,000 for a previously obtained purchase of 1,000 tablets of MDMA.  Moreover, he made a $2,000 down payment for 900 more tablets of MDMA.  The price he paid for the previously obtained quantity of MDMA matched the price that he described to the interrogating officers.  An audio recording of this controlled buy was made.  Defendant Stichmann had also been previously arrested, while apparently in possession of approximately 2,968 tablets of MDMA.

Finally, Special Agent Smith described how his training and experience caused him to believe that those engaged in narcotics trafficking store narcotics, narcotics-related paraphernalia, firearms and

the other items to be searched for at their residences.

On the basis of the above facts, as set forth in Special Agent Smith's affidavit, the Court finds that there was more than sufficient probable cause to issue the challenged search warrant. Accordingly, the Court recommends that Defendant Stichmann's motion to suppress the evidence seized at his residence be denied.

## IV.     DEFENDANT WELCH'S MOTION TO SUPPRESS

Defendant Welch argues that the Court should suppress the evidence seized from both Accomplice M's residence and Defendant Stichmann's residence because the affidavits supporting the warrants authorizing the respective searches failed to set forth probable cause[2]. The Government responds that Defendant Welch lacks standing to challenge the searches because he was not a resident at either location searched. In the alternative, the Government argues that the affidavits in support of the warrants set forth more than ample probable cause.

A defendant has standing to challenge the admission of illegally obtained evidence only if the defendant's own constitutional rights have been violated. See Rakas v. Illinois, 439 U.S. 128, 134 (1978). The Supreme Court has held that a person's Fourth Amendment rights are not infringed if that person "is aggrieved by an illegal search and seizure only through the introduction of damaging evidence

---

[2]Defendant Welch's boilerplate suppression motion, as originally filed, sought the suppression of the items seized from Defendant Welch's person following his arrest, and the suppression of his confessions or statements, on the grounds that Defendant Welch's arrest was illegal. In addition, the motion challenged the search warrants on the additional grounds that the warrants failed to name the items seized, the warrants were improperly executed, and "the seizures were otherwise invalid and violative of the defendant's Fourth Amendment rights." At the motions hearing, Defendant Welch clarified that he challenged the relevant search warrants solely on the basis that the affidavits in support thereof lacked probable cause.

12

secured by a search of a third person's premises or property." Id. at 134.  In Fourth Amendment challenges, whether a defendant has standing depends on whether he had a subjective and reasonable expectation of privacy in the area searched or the items seized.  See Minnesota v. Carter, 525 U.S. 83, 91 (1998).   The person challenging the search bears the burden of establishing a subjective expectation of privacy and that the expectation is objectively reasonable, i.e., one that society is willing to recognize as reasonable.  See Minnesota v. Olson, 495 U.S. 91, 96-97 (1990).

      The Court finds that there is no evidence in the record that indicates that Defendant Welch has standing to challenge the search of Accomplice M's residence.  There is no suggestion in the record that he lived there or even visited that residence.  At oral argument, Defendant Welch's counsel conceded that he could make no argument in support of Defendant Welch's standing to contest this search.  Therefore, insofar as his motion to suppress pertains to evidence seized from the search of Accomplice M's residence, the Court recommends that it be denied.

      However, the Court notes that Agent Smith's affidavit in support of the search warrant authorizing the search of Defendant Stichmann's residence indicates that Defendant Welch lived at Defendant Stichmann's residence while in Wisconsin.  In their post-arrest interview, Defendants Nelson and Traczyk told law enforcement officers that Defendants Stichmann and Welch lived together at a different address during the summer of 2006.  Moreover, the affidavit states that Defendants Nelson and Traczyk told law enforcement officers that Defendants Welch and Stichmann now lived near Stone Lake, Wisconsin.  In addition, the affidavit indicates that this location was "known to be" Stichmann's residence.  In his summary section of the affidavit, Special Agent Smith notes that "When in Wisconsin, Welch lives with Stichmann."  (Search Warrant App. and Aff., Govt. Ex. 2. at 2.)

At the criminal motions hearing, Defendant Welch failed to clarify whether he was living at Defendant Stichmann's residence at the time the warrant was executed. His counsel made no argument that he had standing to contest this search. Accordingly, as Defendant Welch has provided no evidence which proves that he enjoyed either a subjectively or objectively reasonable expectation of privacy in Defendant Stichmann's residence, the Court finds that he does not have standing to contest the search.

However, even if Defendant Welch had standing to contest the search of Defendant Stichmann's residence, as described in detail above, the Court finds that Special Agent Smith's warrant sets forth more than adequate probable cause to support the search of that residence. Therefore, the Court recommends that Defendant Welch's motion to suppress be denied.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

1. Defendant Andrew Lee Stichmann's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 39) be **DENIED**.

2. Defendant Zachary Thomas Welch's Motion to Suppress Physical Evidence (Doc. No. 51) be **DENIED**.

Dated: April 24, 2007

    s/ Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by **May 9, 2007,** after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.